O’Connor, C.J.,
concurring.
{¶ 30} I concur in the majority’s judgment, opinion, and syllabus.
{¶ 31} I write separately to make clear two important points upon which all members of this court agree: a trial court must consider youth as a mitigating factor when formulating a sentence for a crime committed by a juvenile, but the court retains its broad discretion to determine how much weight to give that factor. This appeal illustrates the tension in that equipoise.
{¶ 32} There is nothing novel about the fact that our youth commit murders and mayhem. But the legal lens through which we view their sentencing has changed.
{¶ 33} The United States Supreme Court has made clear that courts must treat youths who commit murders and other serious crimes differently from adults who commit those same crimes. See, e.g., Miller v. Alabama, — U.S.-, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) (holding that the imposition of mandatory life-without-parole sentences on individuals who committed murders while they were under the age of 18 violates the Eighth Amendment); Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (holding that imposition of life- *489 without-parole sentences on juveniles who did not commit homicides violates the Eighth Amendment); Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (holding that executions of individuals who were under the age of 18 when they committed their crimes violates the Eighth and Fourteenth Amendments). In so doing, the court has reminded us, repeatedly, that “[a] child’s age is far ‘more than a chronological fact.’ ” J.D.B. v. North Carolina, — U.S. -, 131 S.Ct. 2394, 2403, 180 L.Ed.2d 310 (2011), quoting Eddings v. Oklahoma, 455 U.S. 104, 115, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). Indeed, the court has seemed frustrated that it has repeatedly noted to us that minors are less mature and responsible than adults, that they are lacking in experience, perspective, and judgment, and that they are more vulnerable and susceptible to the pressures of peers than are adults. See id. at 2404. Generally stated, the rationale for the disparate treatment is that “juveniles have diminished culpability and greater prospects for reform” and “ ‘are less deserving of the most severe punishments.’ ” Miller at 2464, quoting Graham at 68. We, as judges, must consider an offender’s youth when determining which sentence to impose.
{¶ 34} But at the same time, the court has not suggested that courts cannot, or should not, impose significant sanctions on youthful offenders. To the contrary, it has recognized that it is “beyond question” that a youth who commits a murder deserves severe punishment. Miller at 2469. And it has held that a state is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime; the state need only offer a meaningful opportunity for the juvenile offender to be released, “based on demonstrated maturity and rehabilitation.” Graham at 75.
{¶ 35} The constitutional question, then, is how much to consider an offender’s youth, and how much to consider his crime. See Graham at 67.
{¶ 36} Ohio’s sentencing scheme generally requires judges not only to protect the public, but also to punish and rehabilitate the offender by imposing sanctions that are commensurate with the offender’s conduct and its impact on the victim. R.C. 2929.11(A) and (B). The General Assembly has afforded judges great discretion in fashioning proper sentences, constrained only by guideposts that require the sentencing judge to consider certain factors that help determine the seriousness of the crime and the likelihood of recidivism. R.C. 2929.12. Today, we reaffirm that discretion, but we add to the sentencing calculus by holding that an offender’s youth must be an articulated consideration in the sentencing analysis, at least in cases in which life without parole is a potential sanction.
{¶ 37} Our syllabus and analysis are clear. Our holdings today make clear that a judge must separately consider youth as a mitigating factor and that the record must clearly reflect that that consideration took place in sentencing an offender to life without parole for offenses committed as a minor. Those holdings are *490 paramount. But in joining them, I caution that our law requires only that youth be considered as a factor. It does not mandate any particular result from that consideration.
{¶ 38} As a court of last resort, our role is to ensure that sentences meted out by a judge are sentences that comply with statutory commands and constitutional principles. It is not to second-guess decisions made by a trial judge on whether, on the facts, any offender, including youthful offenders, should be given a particular sentence.
{¶ 39} In remanding this cause, we do not opine on the merits of Long’s sentence. We simply ensure that whatever sentence the judge imposes, even if the sentence remains the same, is imposed according to all protections the law affords the offender. Though “appropriate occasions for sentencing juveniles to [the] harshest possible penalty will be uncommon,” Miller, — U.S. -, 132 S.Ct. at 2469, 183 L.Ed.2d 407, they do arise.
{¶ 40} Reasonable minds will certainly differ as to which sentence is most fitting for Eric Long. But whether we believe that the juvenile justice system failed Long, or that Long failed the system, the result is the same: dead young men, wounded young men, incarcerated-for-life young men. None of us should take much solace in that.